468 A.2d 328

**George Dewey ROBINSON**

v.

**STATE of Maryland.**

**No. 64, Sept. Term, 1982.**

Court of Appeals of Maryland.

Dec. 23, 1983.

Michael R. Braudes, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Diane G. Goldsmith and Jillyn K. Schulze, Asst. Attys. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

COLE, Judge.

In this case, once again, we are asked to determine whether a trial judge erred in refusing to permit defense counsel to cross-examine a witness regarding his alleged prior misconduct. The relevant facts are not in dispute.

George Dewey Robinson was charged by indictment with murder, robbery with a deadly weapon and related offenses in connection with the killing of a woman during the course of a burglary of her apartment. The State presented three witnesses who identified Robinson as the perpetrator. Two of these witnesses had been incarcerated with Robinson and testified that he had admitted committing the crime. In return for their testimony, both persons apparently were hopeful of receiving certain rewards.

The other primary witness was James Settles, Jr., who admittedly had committed several burglaries in the D.C. area. He testified that on October 26, 1976, he and Robinson burglarized an apartment. While he was waiting in the car, Robinson struggled with the victim and shot her. Settles was a long-term resident of a mental hospital and had been found not guilty by reason of insanity of another crime. At the defense's request, Dr. Lanham examined Settles and testified that Settles could understand his obligation to tell the truth and was able to relate events that occurred in 1976.

Prior to the defense's cross-examination of Settles, counsel indicated that he intended to cross-examine the witness based on the following facts:

1. On May 7, 1980, while a patient at St. Elizabeth's Hospital, Settles attacked and injured a fellow patient.

2. On May 22, 1980, Settles set three fires at St. Elizabeth's.

3. On May 23, 1980, Settles was searched and found to have a contraband cigarette lighter in his possession.

4. On May 28, 1980, Settles was caught in the process of planning an escape and placed in seclusion.

5. On two occasions, Settles "went AWOL" from St. Elizabeth's in violation of a court order.

Defense counsel primarily argued that this line of questioning would show the witness' "psychological makeup" and state of mind, but he also contended that it would impeach Settles' credibility. However, the trial court advised counsel that he would preclude any inquiry into these incidents and concluded a lengthy colloquy with counsel on this issue by stating:

I indicated at this point, at least, any specific acts to show apparently that he has committed violent acts, six violent acts in the period of 1979 through 1980, at this point, at least, *do not appear to be relevant.* Certainly if you are going to attempt to establish that he is unable to testify, unable to relate the events, unable to perceive the events, then I will allow his mental condition.

But you, apparently, are going to use him in *a back door attempt to either impeach* or in hopes that the jury will disbelieve these, and hope that they will find Mr. Settles as the aggressor, which is what you also had indicated at one point in chambers.

I think that is an improper purpose, so unless you can show some proper purpose, which you have not done so far, I will prohibit you from asking him about specific acts.

You can ask him about convictions. It goes to credibility. If you are going to call in an expert witness to show that he is incompetent then you can use those specific acts. [Emphasis supplied.]

A jury in the Circuit Court for Prince George's County convicted Robinson of first degree "felony-murder" and use of a handgun in the commission of that felony. The court imposed concurrent sentences of fifteen years and life imprisonment. The Court of Special Appeals affirmed in an unreported *per curiam* opinion, *Robinson v. State,* No. 1144, September Term, 1981, decided May 10, 1982, and Robinson

petitioned this Court for a writ of certiorari, posing the following questions for review:

1. May the credibility of a prosecution witness in a criminal case be impeached on the basis of "bad acts" not resulting in convictions?

2. Is the general statutory form indictment for murder sufficient to apprise a defendant of the nature of the charges where the State is proceeding on a theory of felony-murder?

We granted certiorari to consider these issues, which we will address in order.

I

Robinson argues that the proffer suggested appropriate matters for cross-examination because "the nature of the impeaching conduct, and not whether it resulted in a conviction, is the decisive factor." He suggests that the alleged conduct might have resulted in convictions for such crimes as assault, arson or contempt of court. Thus, he concludes that because convictions for these crimes could be used to impeach a witness, he should also be allowed to cross-examine Settles about these prior bad acts even though no convictions resulted.

In *State v. Cox,* 298 Md. 173, 468 A.2d 319 (1983), we indicated that a witness may be cross-examined about prior bad acts that are relevant to assessing his credibility regardless of whether a conviction resulted. However, for several reasons we conclude that the trial court did not err in precluding the proffered inquiry in this case.

First, we note that the proffer does not suggest that Settles committed either crimes for which he could have been convicted or bad acts that logically relate to his veracity. Each of the alleged incidents apparently occurred while Settles was a patient in a mental hospital. Robinson even points out that Settles had "been found not guilty by reason of insanity of another crime and was subject to court-ordered institutionalization."

■ Once having been adjudged insane, one is presumed to remain in that state of mental incapacity for the duration of confinement (*i.e.,* until a restoration of sanity can be demonstrated). *See People v. Chavez,* 629 P.2d 1040 (Colo. 1981); *Mills v. State,* 256 A.2d 752 (Del.1969); *Alexander v. State,* 380 So.2d 1188 (Fla.Dist.Ct.App.1980); *State v. Allan,* 166 N.W.2d 752 (Iowa 1969); *State ex rel. Allen v. Radack,* 246 N.W.2d 661 (S.D.1976). If Settles could not have been convicted because of his mental condition, his behavior while under such disability has little, if any, relevance in evaluating his credibility. The probative value of acts committed while a person is mentally incapacitated is negligible. Furthermore, the acts of which Settles was accused are not especially probative of a person's character for veracity, even if done while in full control of one's mental faculties. The character traits suggested by the proffered incidents relate to violence, pyromania, and a desire to escape confinement—not credibility. Thus, the trial court was correct in concluding that these incidents were not relevant and could not be used in an attempt to impeach the witness.

Second, in our view even if Settles had not been mentally incapacitated, the proffered incidents did not demonstrate crimes that necessarily would have been admissible if convictions had resulted. In *Ricketts v. State,* 291 Md. 701, 436 A.2d 906 (1981), we reviewed the types of crimes that may be used for impeachment purposes and stated: "Our cases then clearly point out that while infamous crimes, felonies, crimes involving moral turpitude, deceit, or dishonesty are not the only types of crimes which are admissible for purposes of impeachment, lesser crimes, to be admissible, must tend to show that the person is not to be believed under oath." *Id.* at 708, 436 A.2d 906. The alleged incidents occurring at the hospital did not qualify under any of these categories.

■ The first alleged incident arguably could have constituted an assault on a fellow patient. However, assault is not necessarily an impeachable offense. This Court has

upheld decisions which allowed and which forbade inquiry into prior assault convictions. *See, e.g., Taylor v. State,* 226 Md. 561, 174 A.2d 573 (1961); *Linkins v. State,* 202 Md. 212, 96 A.2d 246 (1953); *Burgess v. State,* 161 Md. 162, 155 A. 153 (1931); *Balto. & Ohio R. Co. v. Strube,* 111 Md. 119, 73 A. 697 (1909). Thus, it has been suggested that this is an area that is primarily left to the sound discretion of the trial judge. *See Burrell v. State,* 42 Md.App. 130, 399 A.2d 1354 (1979). As such, the trial court in this case would not have erred in prohibiting cross-examination about the attack even if Settles had been convicted for the act. *See Ricketts v. State, supra,* 291 Md. at 705, 436 A.2d 906 (quoting *Gordon v. United States,* 127 U.S.App.D.C. 343, 383 F.2d 936, 940 (1967), *cert. denied,* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968), recognizing that "[a]cts of violence on the other hand, which may result from a short temper, a combative nature, extreme provocation, or other causes, generally have little or no direct bearing on honesty and veracity").

The second proffered instances of bad conduct also did not necessarily indicate crimes that may be used for impeachment. Counsel indicated that he wished to cross-examine Settles about setting three fires at the mental hospital. There is no suggestion that he did anything as serious as burning any of the buildings or burning his own property with the intent to defraud or injure another. Therefore, he probably could not have been convicted of a felony under those provisions of the District of Columbia Code proscribing such conduct. *See* D.C.Code Ann. §§ 22–401 and 22–402 (1981). On the contrary, because he was confined to the hospital, Settles probably only committed an offense proscribed by § 22–403, which states:

> Whoever maliciously injures or breaks or destroys, or attempts to injure or break or destroy, by fire or otherwise, any public or private property, whether real or personal, not his own, of the value of $200 or more, shall be fined not more than $5,000 or shall be imprisoned for not more than 10 years, or both, and if the value of the

property be less than $200 shall be fined not more than $1,000 or imprisoned for not more than 1 year, or both.

The proffer did not suggest that the property burned exceeded $200 in value; therefore, it did not indicate that anything more serious than a misdemeanor was committed. *See Nichols v. United States,* 343 A.2d 336, 341 (D.C.App. 1975) (noting that the value of the property distinguishes between a felony and misdemeanor.) We do not think that such misdemeanors tend to show that a person is not to be believed. Thus, this proffered incident does not indicate a crime that necessarily could be used for impeachment purposes.

The final three proffered incidents are so integrally related to Settles' reason for being at the mental hospital—his mental incapacity—that they obviously could not have resulted in any criminal convictions. Thus, Robinson did not even indicate that he would cross-examine Settles about prior bad acts that would have been admissible even if convictions had resulted.

Finally, we conclude that Robinson's argument that any conduct that might have resulted in a criminal conviction which could be used for impeachment may also be brought out on cross-examination even if no conviction resulted is unsound as a general proposition. In *State v. Cox, supra,* we examined the rules allowing impeachment by use of a prior conviction and by cross-examination about prior misconduct. Although these rules are related, they are not necessarily synonymous in describing the type of inquiry that is permitted.

■ Because a conviction of a crime conclusively establishes the underlying misconduct, counsel may inquire into any final conviction which suggests that the witness is unworthy of belief. However, if the bad acts are not conclusively demonstrated by a conviction, the trial judge must exercise greater care in determining the proper scope of cross-examination.

■ As we noted in *Cox,* the scope of an inquiry on cross-examination is subject to the trial judge's sound discretion. This discretion is exercised by evaluating the probative value of the proffered conduct and then balancing this against the policy counterweights of prejudice and harassment of a witness.

■ When considering a specific example, the flaw in Robinson's argument becomes readily apparent. If a person has been convicted of theft, such a conviction would be a permissible matter for inquiry on cross-examination. However, counsel could not attempt to impeach every witness that testifies by asking whether that person had in fact stolen property. Although prior misconduct of this nature would be relevant in assessing the witness' credibility, the value of such a groundless inquiry would be far outweighed by its prejudicial effect. Furthermore, the trial judge must evaluate the probative value of the inquiry before the question is answered. A question about a conviction promises to provide greater probative value than a question regarding acts that the witness might not have committed. Therefore, the trial judge will often be required to preclude an inquiry about prior bad acts not resulting in convictions where the same inquiry would be allowed if a conviction had resulted. Indeed, we would anticipate that only prior bad acts which are very closely related to the witness' veracity and for which counsel can demonstrate a firm basis for believing that the conduct in fact occurred would pass the trial judge's scrutiny. *See, e.g., State v. Cox, supra.*

## II

■ The second issue raised by Robinson may be resolved simply. In short, Robinson argues that he was convicted of a crime—felony-murder—with which he was not charged because the statutory short-form murder indictment does not include the elements of felony-murder.[1] *See* Md.Code

---

1. The first count of Robinson's indictment provided:

(1957, 1982 Repl.Vol.), Art. 27, § 616. Maryland law requires a charging document to include all of the essential elements of the offense charged. *See Ayre v. State,* 291 Md. 155, 165, 433 A.2d 1150 (1981). Therefore, Robinson contends, the indictment was deficient under State law.

■■■■■ Significantly, Robinson has not raised a constitutional attack, but challenges the charging document on State law grounds. At trial, when asked whether he had authority for the statement that the State had to specifically charge felony-murder, Robinson's counsel stated: *"My authority is the Code,* Your Honor. I think they have to specifically state that section."* [Emphasis supplied.] At no time did counsel raise a constitutional claim. Because of the limited nature of the attack, we find the issue to be readily answered by prior decisions of this Court and by the action of the Legislature itself. In *Wood v. State,* 191 Md. 658, 666–67, 62 A.2d 576 (1948), we rejected the argument that a murder indictment similar to that used in this case was insufficient to charge felony-murder. Furthermore, at least as a matter of state non-constitutional law, the legislatively enacted short-form indictment is presumed to be sufficient to charge the offense named in the statute. Whether the short-form indictment also is sufficient to withstand constitutional scrutiny must await resolution until the issue has been properly raised before this Court.

JUDGMENT AFFIRMED.

APPELLANT TO PAY THE COSTS.

---

The Grand Jurors of the State of Maryland, for the body of Prince George's County, on their oath do present that JAMES (NMN) SETTLES, JR., and GEORGE DEWEY ROBINSON late of Prince George's County, aforesaid, on or about the 26th day of October, in the year of our Lord nineteen hundred and seventy six, at Prince George's County aforesaid, feloniously, wilfully and of their deliberately premeditated malice aforethought, did kill and murder Annette Nee, in violation of the Common Law of Maryland, and against the peace, government and dignity of the State.