600 A.2d 856

**Bobby Dean COATES**

v.

**STATE of Maryland.**

**No. 1718, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Jan. 29, 1992.

Michael R. Braudes, Asst. Public Defender (Stephen E. Harris, Public Defender on the brief), Baltimore, for appellant.

Kreg Paul Greer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Submitted before CATHELL, DAVIS and MOTZ, JJ.

DAVIS, Judge.

Bobby Dean Coates, appellant, was charged with three counts of manslaughter by automobile, three counts of homicide by motor vehicle while intoxicated, and lesser related offenses. On August 8, 1990, appellant was convicted by a jury in the Circuit Court for Prince George's County (Melbourne, J.) of three counts of homicide by motor vehicle while intoxicated and the lesser related offenses. He was acquitted on the manslaughter counts. On September 24, 1990, the court merged the convictions upon the lesser offenses into the homicide convictions and imposed a sentence of three consecutive five year terms of incarceration with all but nine years suspended. His appeal, timely noted, presents the following questions:

I. Did the trial judge impermissibly restrict the defense cross-examination of prosecution witnesses?

II. Did the trial judge err in ruling that evidence of intoxication or drug use of the victims was relevant only to credibility and not to the substance of appellant's guilt or innocence?

III. Did the trial judge err in permitting prosecution witnesses to remain in the courtroom after their testimony and in refusing to permit them to be reserved as rebuttal witnesses?

Because we hold that the trial court, by its instruction, foreclosed the jury from considering evidence relevant on the question of who caused the accident, we reverse and

explain. We nonetheless address the remaining issues for guidance of the lower court when the case is retried.

A motor vehicle accident which occurred on October 14, 1989, at approximately 1:15 a.m. on Bealle Hill Road, a dual lane road in Prince George's County, provides the factual backdrop in this case. The lanes of the road are each 10 feet wide and are separated by a double yellow line.

Appellant was driving north on Bealle Hill Road in his Ford Thunderbird automobile. He had consumed about four beers in the preceding five hours. Eleven members of a motorcycle club were proceeding south along the same road, riding six motorcycles, traveling two abreast. The motorcyclists had spent the evening at a bar and then at a party. As appellant and the motorcyclists passed each other, a collision occurred. Appellant's automobile collided with two of the motorcycles, on which John Becker and Brian Minor were riding. Apparently, other motorcycles collided with each other. As a result, Brian Minor, Donald Blaylock, and his passenger, Helen Doane, were killed. Appellant and several of the surviving motorcyclists were injured.

At trial, several of the motorcyclists testified that appellant crossed the double yellow line, entered their lane, and caused the accident. Appellant testified that he drove in his own lane and that at least one motorcycle crossed the line, struck his car, and caused the accident.

Accident reconstructionists, qualified as experts, were called by both parties and testified. Corporal Patrick Burley of the Prince George's County Police Department testified for the State that, in his opinion, appellant's automobile crossed the line and collided with the motorcycles in the southbound lane. According to Corporal Burley, appellant's automobile pushed Becker's motorcycle into Blaylock's motorcycle and then crashed head-on into Minor's motorcycle. Appellant's expert, Harry Kriemelmeyer, testified that the evidence did not support the conclusion that appellant crossed the line. He further opined that, when appellant

collided with Minor, the impact occurred on appellant's side of the road. The witness claimed Minor, not appellant, was operating his vehicle on the wrong side of the road. Each expert contested the other's opinion in regard to the correct interpretation of the various road marks and items of physical evidence.

At the conclusion of the evidence, the lower court instructed the jury, in part:

> You have heard evidence that the drivers of some of the motorcycles involved in this accident may have consumed alcohol and/or a controlled dangerous substance prior to the accident. It is not a defense to the charges in this case that some or all of the drivers of the motorcycles may have been intoxicated and/or under the influence of these substances or were guilty of contributory negligence. You are instructed that *you are not to consider this evidence unless you find that the accident was caused by any of the drivers of the motorcycles.*

> You have also heard evidence in this case that some or all of the passengers of the motorcycles involved in this accident may have been consuming alcohol prior to the accident. It is not a defense to these charges that the victim Helen Doane may have been consuming alcohol prior to her death.

> It is also not a defense to these charges that the passengers who testified may have consumed alcohol prior to the accident. This evidence is only to be considered by you in so far as it affects the witness's credibility, that is, their ability to perceive the incident and their memory. It is not relevant otherwise.

> I tried to make that clear in the beginning of this trial. I hope you all understand the Court's ruling. Their consumption at that party immediately before this accident is relevant to whoever is on the witness stand does it affect the ability to hear, see what they are testifying to. I'm talking about the passengers now. So whoever testified who was a passenger it does go to the credibility, are

you going to believe them, but it is not a defense to the charges in this case. [Emphasis supplied.]

## I

## RESTRICTION ON DEFENSE'S CROSS–EXAMINATION

Appellant claims that the trial judge impermissibly restricted the defense's cross-examination of prosecution witnesses John Becker, Robert Greininger, and Corporal Burley.

■ During the cross-examination of John Becker, defense counsel asked Becker if he was pursuing a civil suit in this matter. The prosecution's objection to this question was sustained by the court. Appellant claims he intended to impeach the witness and show motive. Defense counsel apparently based his question on a statement Becker made to police, but counsel failed to lay the proper foundation for his question. When the trial judge explained her reason for sustaining the objection, counsel did not attempt to lay the proper foundation and then restate the question. Md. Rule 4–323. Thus, appellant forfeited the opportunity to pursue this line of questioning.

■ Subsequently, on cross-examination of Robert Greininger, defense counsel attempted to question him about an alleged physical attack that counsel suggested Greininger made upon appellant after the accident occurred. The State's objection was sustained, and the trial court stated, "You are introducing evidence in your case. You are not cross-examining." Cross-examination is generally limited to matters raised on direct examination. *Smallwood v. State*, 320 Md. 300, 307, 577 A.2d 356 (1990). The scope of the cross-examination inquiry is subject to the trial judge's sound discretion. *Robinson v. State*, 298 Md. 193, 201, 468 A.2d 328 (1983). We are not persuaded that the trial judge abused her discretion in this case. Questioning the witness concerning an attack on appellant was outside the scope of the direct examination and properly could have

been raised if appellant had called Greininger as his witness.

■  Finally, appellant complains of the court's restrictions on his cross-examination of Corporal Burley, who was called as the State's expert on accident reconstruction. Appellant enumerates several instances: whether Corporal Burley had testified in previous motorcycle cases and how many; whether Corporal Burley inquired about the blood alcohol levels of Becker, Blaylock, and Sharon Storke, a motorcycle passenger; whether Corporal Burley inquired about Becker's cocaine use; and when Corporal Burley informed appellant that he was being charged. In each instance, the prosecution's objection was sustained.

Appellant's arguments are not persuasive. The trial judge properly sustained the prosecutor's objection regarding the number of motorcycle cases in which Corporal Burley had testified previously because defense counsel had asked the question and it had been answered on two prior occasions during the *voir dire* of Corporal Burley as to his qualifications.

Defense counsel questioned Corporal Burley regarding whether he inquired into the blood alcohol levels of Becker, Blaylock, and a passenger. The trial judge properly sustained the prosecution's objection, as this issue was not within the scope of Corporal Burley's testimony as an expert in accident reconstruction. Moreover, this subject was not raised on direct examination; the questioning, therefore, was improper. At a later point, counsel asked Corporal Burley about his inquiry into Becker's cocaine use. This inquiry was outside the scope of the direct examination. Becker himself had previously testified that he did in fact ingest cocaine prior to the accident.

The trial court did not err in sustaining the prosecution's objection to the question as to when Corporal Burley had informed appellant that he was being charged in connection with the accident. The trial court's ruling was correct that

defense counsel's question was outside the scope of redirect examination.

## II

## EVIDENCE OF INTOXICATION OR DRUG USE BY VICTIMS

Appellant posits that

THE TRIAL COURT ERRED IN RULING THAT EVIDENCE OF INTOXICATION OR DRUG USAGE BY THE ALLEGED VICTIMS WAS RELEVANT ONLY TO CREDIBILITY AND NOT TO THE SUBSTANCE OF APPELLANT'S GUILT OR INNOCENCE.

Appellant contends that the court's instruction and "the numerous related rulings applying to evidence and argument ... completely skewed the trial of this case." He asserts that the central issue was who caused the accident, and whether one of the motorcyclists crossed the yellow line and struck his vehicle was relevant to the question of causation. Citing the trial judge's rulings excluding evidence of intoxication contained in the medical records of the victims, the trial judge's instructions on whether the jury should consider evidence of intoxication as to who caused the accident, and what appellant perceives to be restrictions on the closing argument by defense counsel, appellant claims the jury was denied the right to consider relevant evidence in arriving at its verdict. We agree.

Manslaughter by automobile requires proof of gross negligence, which can be defined as wanton or reckless disregard for human life. *State v. Kramer*, 318 Md. 576, 590, 569 A.2d 674 (1990). No proof of intoxication is required.

Because of the difficulty in proving "gross negligence" (that is, wanton and willful conduct), the offense of homicide by motor vehicle while intoxicated was established. *Webber v. State*, 320 Md. 238, 577 A.2d 58 (1990). The Legislature's purpose in enacting this crime was to

create a lesser offense than manslaughter which would require "proof of a lesser degree of negligence than gross negligence." *Id.* at 247, 577 A.2d 58. Therefore, the crime of homicide by motor vehicle while intoxicated requires only that the State prove that appellant was intoxicated[1] when he drove the motor vehicle that struck and killed the victim and that his negligent driving caused the victim's death. *Id.* at 248, 577 A.2d 58.

Appellant alludes to the reference by the lower court to limiting the evidence of intoxication to the issue of credibility. While there was reference to the effect of drugs and alcohol on the witnesses, the court instructed the jury not to consider intoxication on the question of guilt or innocence unless they found that the accident was caused by one of the motorcyclists.

We, of course, recognize that, even though proof of gross negligence is not required to convict for the offense of homicide by motor vehicle, the prosecution must establish that a victim's death was caused by the defendant's negligent driving. Our task therefore is to determine if the evidence offered renders the desired inference, *i.e.*, that one or more of the victims crossed the center line, more probable than it would be without the evidence. *Blondes v. Hayes*, 29 Md.App. 663, 668, 350 A.2d 163 (1976), citing *McCormick on Evidence* (2d ed.) at 434–37.

In the case *sub judice*, evidence by the appellant that one or more of the motorcyclists caused the accident and hence the death of the victims—Minor, Blaylock, and Doane—would clearly be admissible as proof that the victims did not die as a result of the negligence of the appellant.

After Corporal Patrick Burley testified for the State that the accident occurred when appellant's automobile crossed the dividing line and collided with the motorcycles in the

---

1. Appellant does not argue that there was insufficient evidence of his own intoxication or that the evidence before the jury was legally insufficient to support his conviction.

southbound lane, appellant called Harry Kriemelmeyer who gave a contrary opinion in his testimony:

Q   All right, sir.  As regards the collision between V-1, Mr. Coates' car, and V-4, the Minor vehicle, were you able to reach any conclusion as regards that contact, and if so, how did you reach that conclusion?

A   My conclusion on that contact was that Mr. Coates was on his side of the yellow line, that the left front tire began the mark which is dimensioned as P to Q on Corporal Burley's report.  That I believe places his right front tire two feet or so—without checking the dimensions, approximately two feet to the right of the center line of the road.

Q   I'm sorry, his right front tire or left?

A   His left front tire in dimensions P to Q.

Q   You base that on matters you previously testified to?

A   Principally the characteristic of the mark that is left, the mark as it survived, the forensics of the left front tire, the scrape material resting on that tire and pictures of the scene.

Q   Conversely, would that place Mr. Minor's motorcycle then in the adverse lane?

A   Yes, it would.

There was thus evidence before the jury from the appellant's expert witness that it was motorcyclist Minor who crossed the dividing line.  Additionally, in asserting that the lower court should not have limited the possibility of crossing the yellow line to Brian Minor, he cites as examples in the record the testimony of Donna Arrington and John Becker concerning the proper position of a passenger on a motor vehicle.  Donna Arrington was questioned on direct examination:

Q   And did he ever give you any instructions or directions as to how you should handle yourself riding on the back of a motorcycle?

[ASSISTANT STATE'S ATTORNEY]: Your Honor, objection.

THE COURT: I am going to let him ask it. Go ahead.

THE WITNESS: Just don't lean over because when you lean, you could fall over. You know, just sit still.

. . . .

Q Okay. So then you lean properly, the bike moves properly; if you don't, it may be difficult?

A He said just sit still.

Subsequently, John Becker similarly testified:

Q How long have you been riding a motorcycle?

A Seventeen years.

Q Is it important to have good balance on the motorcycle?

A Yes, it is.

Q And if you are carrying a passenger, is it important for both the driver and the passenger to coordinate their weight shifts?

A It's imperative that the passenger remain parallel with the frame of the motorcycle and the operator do any shifting or adjusting that needs to be done to correct the balance.

Q What would happen if a passenger shifted the weight off of the frame that you have just described?

[ASSISTANT STATE'S ATTORNEY]: Your Honor, defense attorney is again getting into speculation.

THE COURT: Sustained.

BY [DEFENSE COUNSEL]:

Q Would you let a passenger get onto the back of your bike that you thought was physically impaired in any way?

[ASSISTANT STATE'S ATTORNEY]: Your Honor, I would again object.

THE COURT: Sustained.

Setting forth these two examples from the testimony at trial, appellant contends that evidence was "adduced that the intoxication of a motorcycle passenger could contribute to an accident, because a motorcycle can make a turn most

safely and accurately if the driver and passenger are lean-
ing in the same way at the same time."

■ It is within the discretion of the trial judge to make a
legal determination, in the first instance, regarding whether
the ultimate fact to be proved is too remote from the
evidentiary predicate. We said in *Santoni v. Schaerf*, 48
Md.App. 498, 518, 428 A.2d 94 (1981):

> Although the jury may choose between permitted infer-
> ences (or choose not to draw any inference at all), *it is for
> the judge in the first instance to determine as a matter
> of law,* which inferences are permitted. When analyzing
> the legal sufficiency of circumstantial evidence rather
> than direct evidence, we are measuring the adequacy of
> predicate facts, assuming them to be true, to give rise to
> inferred facts. The rule is that the inferred fact must
> follow more likely than not from the predicate fact for
> the jury even to be permitted the option of inferring.
> [Emphasis supplied.]

■ We believe that, where evidence was adduced to
establish either that Brian Minor or one of the other motor-
cyclists crossed the center line or that one of the passen-
gers caused the motorcyclist(s) to cross the center line, the
jury should have been permitted to consider the evidence of
intoxication of any of the victims who could have crossed
the center line or caused other motorcyclists to cross the
line. Likewise, appellant should have been allowed to pur-
sue the line of questioning intended to establish that the
passengers, if inebriated, could have caused the motorcycles
to shift and cross the center line.

■ More importantly, the trial judge instructed the jury
that "you are not to consider this evidence unless you find
that the accident was caused by any of the drivers of the
motorcycles." The trial court crafted instructions intended
to restrict the jury's consideration of evidence of intoxi-
cation to those motorcyclists who may have caused the
accident. While the parties all understood that the ultimate
issue in the case was causation, the trial judge was particu-

larly concerned that the jury understand that evidence of intoxication not be considered except in two instances: (1) where the motorcyclist survived and where the evidence of intoxication was probative on the witness's ability to recollect and perceive what happened; and (2) where from other evidence the jury concluded that the intoxicated motorcyclists may have caused the accident by crossing the center line. The trial court, however, in its attempt to restrict the consideration of evidence of intoxication to only those two appropriate areas of inquiry, we think too narrowly restricted the purpose for which the jury could consider the evidence of intoxication.

More particularly, the above instruction precluded the jury from a consideration of evidence of intoxication *unless* it found that one of the drivers of the motorcycles had caused the accident. By so doing, evidence which bore on the question of who caused the accident was excluded until such time as the jury had already determined that it was one or more of the drivers of the motorcycles who had caused the accident. Appellant was entitled to have the jury factor in, during its deliberations, the consumption of alcohol immediately preceding the accident since, considered in conjunction with all of the other evidence, the evidence would render it more probable that the motorcyclists caused the accident than would be the case without such evidence.

In sum, the trial judge properly restricted the jury's consideration of alcohol consumption by the motorcyclists as it related to a contributory negligence defense to homicide by motor vehicle, but she was too restrictive in not allowing the jury to consider the evidence of intoxication as it supported appellant's theory of causation. The court then erred in not permitting the jury to consider evidence of intoxication of the victim(s) until after they had concluded in their deliberations that it was the motorcyclists who were at fault. It is axiomatic that, having concluded that the motorcyclists had caused the accident, there would at that point be no need to consider the evidence of intoxication.

█ Finally, as to the latitude of closing argument allowed by the trial court, our reasoning herein applies equally to argument by counsel. Counsel should have been permitted to argue any facts in evidence which supported appellant's theory that it was the motorcyclists who crossed the line, including evidence of intoxication of the victims where evidence had been produced to support such a theory. The law is well settled that counsel are entitled to argue any point of law which is supported by the evidence. *Wilhelm v. State*, 272 Md. 404, 326 A.2d 707 (1974); *Sangster v. State*, 70 Md.App. 456, 521 A.2d 811 (1987), *aff'd*, 312 Md. 560, 541 A.2d 637 (1988).

## III

## WITNESS SEQUESTRATION

█ Appellant's final argument is that the trial court erred in permitting two witnesses, Becker and Greininger, to remain in the courtroom after they gave their testimony and in refusing to permit them to be reserved as defense witnesses.

As to witness Becker, the trial court asked him to remain outside the courtroom and make himself available although Becker was not subpoenaed by the defense. In effect, Becker was retained in a sequestered status. Thus, appellant has no argument on appeal.

As to Greininger, defense counsel, at the conclusion of his recross-examination, stated he had no further questions. The prosecutor had no further questions and requested that Greininger be permitted to remain in the courtroom. Defense counsel objected, requesting that Greininger be reserved as a rebuttal witness. The trial court questioned defense counsel and determined that this witness had not been summonsed by the defense. Thus, Greininger was only a State's witness. Consequently, when the defense finished its cross-examination of Greininger, it had no further right to call him. Therefore, at that point, Greininger was no longer a witness and no longer covered by the

120

sequestration rule. He was returned to his status as member of the general public and free to leave or remain in the courtroom. Accordingly, the trial judge did not err by refusing to sequester Greininger.

JUDGMENTS REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR A NEW TRIAL.

COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.