634 A.2d 982

**Jaime Mauricio PINETA**

**v.**

**STATE of Maryland.**

**No. 377, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Dec. 30, 1993.

**616**

Michael R. Braudes, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Andrew L. Sonner, State's Attorney for Montgomery County, Rockville, on the brief), for appellee.

Submitted before ALPERT, WENNER and FISCHER, JJ.

ALPERT, Judge.

Jaime Pineta, appellant, was convicted by a jury in the Circuit Court for Montgomery County (Raker, J.) of two counts of manslaughter by automobile, reckless driving, engaging in a speed contest, and speeding. The court sentenced appellant to two concurrent eighteen-month terms of imprisonment on the automobile manslaughter convictions, with all but six months suspended, and imposed fines of $500.00 on each of the remaining convictions, with all fines suspended except the fine for engaging in a speed contest.

Appellant presents the following questions:

I. Did the trial court err in failing to resolve the convictions and sentences upon the lesser offenses under the doctrine of merger?

II. Did the trial court err in excluding relevant evidence?

III. Was the evidence sufficient to sustain a conviction of automobile manslaughter?

### Facts

On October 3, 1992, at approximately 9:15 p.m., appellant was driving a blue Camaro IROC northbound on Georgia Avenue near the intersection of Randolph Road in Wheaton, Maryland, when he encountered an acquaintance, Jaime Chicas, driving a white Mustang. Appellant and Chicas stopped their automobiles and conversed briefly. According to various State witnesses, the two vehicles then "revved" their engines

and engaged in a "drag race" on Georgia Avenue, at estimated speeds of at least sixty to seventy miles per hour. The relevant stretch of Georgia Avenue is a three-lane road in each direction, with a speed limit that varies from thirty-five to forty-five miles per hour.

As the two automobiles proceeded northbound, appellant was in the left lane and Chicas was in the center lane. Near the intersection of Georgia Avenue and Urbana Road, at a break in the median strip, a blue Toyota Corolla attempted to make a left turn from southbound Georgia Avenue into the driveway of a Kentucky Fried Chicken restaurant. As the Corolla crossed the northbound lanes, it passed in front of the Camaro successfully, but was struck by the Mustang. Both occupants of the Corolla, Neville Young and Dorette Morrison, were thrown from their vehicle and killed. During the trial, Officer John Coda, an accident reconstruction expert, testified that a very conservative estimate of the speed of Chicas's vehicle at the time that it began to skid was seventy miles per hour. The State's witnesses testified that Chicas and appellant were traveling at approximately the same speed immediately prior to the accident.

## I.

Appellant contends that his sentences for reckless driving, engaging in a speed contest, and speeding must all be vacated under the doctrine of merger. We agree in part. In determining whether two offenses are the same for purposes of double jeopardy and the Maryland common law prohibition against multiple punishments for the same crime, we must first apply the "required evidence test." *See, e.g., State v. Lancaster,* 332 Md. 385, 394, 631 A.2d 453 (1993) (holding that the required evidence test is the "threshold" test for determining merger of offenses). Under this test,

> The required evidence is that which is minimally necessary to secure a conviction for each statutory offense. If each offense requires proof of a fact which the other does not, or in other words, if each offense contains an element which

the other does not, the offenses are not the same for double jeopardy purposes, even though arising from the same conduct or episode. But, where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other, the offenses are deemed to be the same for double jeopardy purposes.

*Thomas v. State,* 277 Md. 257, 267, 353 A.2d 240 (1976). Thus, we must examine the elements of each crime to determine whether all the elements of one crime are present in another.

Appellant was convicted of speeding in violation of section 21–801.1 of the Transportation Article, which provides, in part, "[T]he limits specified in this section or otherwise established under this subtitle are maximum lawful speeds. A person may not drive a vehicle on a highway at a speed that exceeds these limits." Md.Ann.Code, (1992 Repl.Vol.) § 21–801.1(a), of the Transportation Article. Appellant was also convicted of participating in a speed contest, under section 21–1116(a) of the Transportation Article, which provides, in relevant part, "on any highway or on any private property that is used by the public in general, a person may not drive a vehicle in a race or speed contest, whether or not on a wager or for a prize or reward."

The State contends that these two offenses do not merge, because one may engage in a race under section 21–1116(a) without necessarily exceeding the speed limit and one may exceed the speed limit under section 21–801.1 without engaging in a race. The State is correct. Thus, because each offense requires proof of a fact not required by the other, they do not merge under the required evidence test.

Additionally, we conclude that these two offenses (*i.e.,* speeding and engaging in a speed contest) do not merge under the rule of lenity. Under this rule, if the legislature did not intend to provide separate punishments for two statutory offenses, then the offenses merge. *Dillsworth v. State,* 308 Md. 354, 366–67, 519 A.2d 1269 (1987). The relevant inquiry is whether the two offenses are "of necessity closely intertwined" or whether one offense is *"necessarily* the overt act" of the

other. *Id.* We hold that the two offenses presented here are not of necessity so closely related to give us reason "to assume that the legislative body contemplated the possibility of multiple punishment." *Id.* Thus, merger for these offenses under the rule of lenity is not appropriate.

■ Appellant next contends that the offense of engaging in a speed contest merges into the offense of reckless driving. "A person is guilty of reckless driving if he drives a motor vehicle: (1) In wanton or willful disregard for the safety of persons or property; or (2) In a manner that indicates a wanton or willful disregard for the safety of persons or property." Md.Ann.Code § 21–901.1(a), of the Transportation Article. Thus, under the facts of this case, the jury could have determined that by engaging in a race on Georgia Avenue, appellant drove his motor vehicle in a manner that indicated "wanton and willful disregard" under section 21–901.1(a).

Under the specific circumstances presented here, the jury must have based appellant's conviction for reckless driving solely on the evidence that supported his conviction for engaging in a speed contest. Thus, in this case, the speed contest charge became, in effect, a lesser-included offense of reckless driving. These offenses are, therefore, the same for purposes of our required evidence analysis. *See, e.g., Lancaster,* 332 Md. at 411–12, 631 A.2d 453; *Nightingale v. State,* 312 Md. 699, 705–08, 542 A.2d 373 (1988); *Thomas,* 277 Md. at 267–68, 353 A.2d 240. We conclude that appellant's sentence for engaging in a speed contest must be vacated under the required evidence test.

■ Finally, appellant argues that the offense of reckless driving merges into the offense of automobile manslaughter. Article 27, section 388 provides that "[e]very person causing the death of another as the result of the driving, operation or control of an automobile [or other vehicle] in a grossly negligent manner, shall be guilty of a misdemeanor to be known as 'manslaughter by automobile [or other vehicle].'" Md.Ann. Code art. 27, § 388 (1957, 1992 Repl.Vol.). Thus, gross negligence, defined as "a wanton or reckless disregard for human

life" is a required element of automobile manslaughter. *See Duren v. State,* 203 Md. 584, 588, 102 A.2d 277 (1954).

Reckless driving is not ordinarily sufficient evidence of gross negligence, unless it is of such "extraordinary or outrageous character" as to evince the required disregard for human life, rather than disregard for the safety of property. *State v. Kramer,* 318 Md. 576, 590, 569 A.2d 674 (1990); *Taylor v. State,* 83 Md.App. 399, 403, 574 A.2d 928 (1990). We hold that, under the required evidence test, the State must prove the lesser offense of reckless driving, in order to prove the greater offense of manslaughter by automobile. Although the precise issue of merger presented here has not previously been addressed by a Maryland appellate court, the Court of Appeals has held that negligent driving is a lesser-included offense of automobile manslaughter.[1] *Gianiny v. State,* 320 Md. 337, 343, 577 A.2d 795 (1990). We agree with appellant's contention that there is no analytical difference between negligent driving and reckless driving for purposes of determining whether these offenses should merge into the offense of manslaughter by automobile. We conclude that appellant's sentence on the reckless driving offense must be vacated under the required evidence test.

It follows from our analysis that appellant's sentences for participation in a speed contest and reckless driving must be vacated under the doctrine of merger.

## II.

Appellant contends that the trial court erred when it excluded testimony regarding codes used in the investigating police officer's accident report and testimony as to other accidents that had occurred at the same intersection. We disagree.

---

1. "A person is guilty of negligent driving if he drives a motor vehicle in a careless or imprudent manner that endangers any property or the life or person of any individual." Md.Ann.Code § 21–901.1(b), of the Transportation Article.

■ On recross-examination of Officer Coda, defense counsel attempted to elicit testimony regarding codes used by the officer in his accident report. The court sustained an objection to this line of questioning and permitted counsel to voir dire the witness out of the presence of the jury.

Q [defense counsel]: Officer, looking on the second page, the flip side of your report right at the bottom where there is an area for cause of accident there [are] two categories, primary and secondary. [At] primary you have written the number 13. What does that mean, sir?

A [Officer Coda]: Number 13 is a cause code. 13 is for fail to grant right of way.

Q: And that would be with respect to the vehicle [the Toyota] that Mr. Young and Ms. Morrison were in?

A: Yes. That is for reporting purposes, for statistical reporting purposes is the reason that these reports are prepared.

Q: So when you put in the code 13 it really means that they failed to yield the right of way to oncoming traffic?

A: Yes, as the primary, what primarily would have caused the accident.

Q: Okay, and for secondary cause you put in the number 20. What does that mean, sir?

A: I don't have the code sheet with me. I believe 20 is negligent driving. But that does not refer to vehicle one.

Q: That is with respect to vehicle two [the Mustang]?

A: The second cause could be with respect to either vehicle as well as primary. It is not, the way this reporting system is set up it could be either vehicle. It is just listed as a cause in general.

Q: Moving over into the next column for contributing circumstances what kind of information is conveyed in that column?

A: It could be any information, any circumstance which contributed to the accident.

Q: Okay, what does 95 mean?

A: No contributing circumstance.

Q: Pardon?

A: None. No contributing circumstance.

Q: And 04?

A: I believe is speed.

Q: Okay, but how can there be no contributing circumstances if—

A: That refers—

Q: —someone is failing to yield the right of way?

A: Block three, other than, it is other than cause. Contributing circumstance is other than cause. Block three indicates there is no contributing circumstance on the part of vehicle number one which [would] have been in this case the Toyota.

Q: Other than failure to yield the right of way?

A: Yes. That has already been listed.

Based on this voir dire, the court sustained the State's objection. The court determined that because the officer had testified only with respect to accident reconstruction and the speed of the vehicles, the questions regarding the codes in the report were not proper impeachment and exceeded the scope of redirect. Cross-examination is generally limited to the scope of direct examination and is subject to the trial court's sound discretion. *Robinson v. State,* 298 Md. 193, 468 A.2d 328 (1992).

 Appellant cites *Coates v. State,* 90 Md.App. 105, 600 A.2d 856 (1992), for the proposition that the court erroneously excluded evidence that tended to show that the driver of the Toyota caused the accident by failing to yield the right of way. We conclude that the facts of this case are distinguishable from *Coates.* In that case, the appellant was convicted of homicide by motor vehicle while intoxicated. At trial, there was conflicting testimony as to which vehicle had crossed the double yellow line, causing the fatal accident. We held that evidence of the intoxication of the victims should have been admitted, where there was also evidence that one of the

victims had crossed the dividing line, causing the accident. Thus, the intoxication of the victims was relevant because "the evidence would render it more probable that the [victims] caused the accident than would be the case without such evidence." *Coates*, 90 Md.App. at 118, 600 A.2d 856. By contrast, in the case before us, there was no showing that the testimony regarding the codes used by the police officer in the accident report would render it more probable that the driver of the Toyota caused the accident. It is in the discretion of the trial court, in the first instance, to determine as a matter of law whether the ultimate fact to be proved is too remote from its evidentiary predicate. *Id.* at 117, 600 A.2d 856. We conclude that the trial court properly excluded this evidence.

 Additionally, we hold that the trial court did not abuse its discretion by excluding evidence of a subsequent accident that had occurred at the same intersection. Appellant made no showing that the subsequent accident had occurred under the same conditions that existed in the accident in this case. Thus, the court properly excluded this testimony as irrelevant.

### III.

Appellant contends that because his automobile did not collide with the victims' automobile, the evidence was insufficient to sustain his convictions for automobile manslaughter. We disagree.

 This is the first time that a Maryland appellate court has addressed the question of whether an individual who has engaged in a race may be convicted of manslaughter, regardless of which automobile physically caused the death. We have, however, in a civil context, previously held,

> It is a well-settled rule, applicable in Maryland, that the racing of motor vehicles on a public highway is negligence. All who engage in a race are liable for injury sustained by a third person as a consequence of the race, irrespective of which racing car actually inflicted the injury or of the fact that the injured person was a passenger in one of the cars.

*Walker v. Hall,* 34 Md.App. 571, 580, 369 A.2d 105 (1977). This reasoning is similarly applicable in the context of a criminal prosecution, with the additional requirement that gross negligence must be shown to sustain a conviction for automobile manslaughter. We hold that where a third person has been killed as a direct consequence of the illegal racing of motor vehicles, any driver participating in the race may be convicted of manslaughter by automobile under Article 27, section 388, regardless of which driver actually collided with the victim or the victim's vehicle, resulting in the death. Under the circumstances of this case, the jury could have rationally found that appellant agreed to engage in a "drag race" with Chicas at speeds of at least seventy miles per hour on Georgia Avenue and that the victims' deaths were the direct consequence of gross negligence on the part of both appellant and Chicas. By engaging in the illegal speed contest, appellant aided and abetted the criminal conduct of Chicas and appellant's actions were the proximate cause of the victims' deaths. Thus, the evidence was sufficient to sustain appellant's convictions for manslaughter by automobile. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *accord State v. Rusk,* 289 Md. 230, 240, 424 A.2d 720 (1981).

Our decision is consistent with the weight of authority in other jurisdictions.[2] *See, e.g., State v. Martin,* 539 So.2d 1235, 1237–39 (La.1989) (upholding conviction for negligent homicide resulting from a drag race, despite fact that appellant's vehicle did not hit the victims' vehicle); *accord State v. McFadden,* 320 N.W.2d 608, 610–11 (Iowa 1982); *see also* J.A. Connelly, Annotation, *Who Other than Actor is Liable for Manslaughter,* 95 A.L.R.2d 175 (1964 & 1993 later case service); H.G. Hirschberg, Annotation, *Motor Vehicle Operator's Criminal*

---

**2.** Appellant cites the contrary holding in *Commonwealth v. Root,* 403 Pa. 571, 170 A.2d 310 (1961), in support of his position that the evidence was insufficient to sustain his manslaughter convictions. *Root* is clearly distinguishable from this case because it concerned a prosecution based on the death of a co-participant in a race, rather than the death of a third party.

*Responsibility for Homicide where He and Deceased were Racing, though Accused's Car was Not Otherwise Involved in the Collision or Incident,* 82 A.L.R.2d 463 (1962 & 1990 later case service).

SENTENCES IMPOSED FOR ENGAGING IN SPEED CONTEST AND RECKLESS DRIVING VACATED; JUDGMENTS OTHERWISE AFFIRMED; COSTS TO BE PAID ½ BY APPELLANT AND ½ BY MONTGOMERY COUNTY.