THE STATE OF OHIO *v.* UHLER.

[Cite as State v. Uhler (1979), 61 Ohio Misc. 37.]

(No. CR 41264—Decided October 21, 1979.)

Court of Common Pleas of Cuyahoga County.

*Mr. Daniel J. Ryan,* assistant prosecuting attorney, for plaintiff.

*Mr. Peter Onysko,* for defendant.

McMONAGLE, JAMES, J.   This matter is before the court on a motion for judgment of acquittal made by the defendant at the close of all the testimony, purusant to Crim. R. 29. The defendant has been indicted by the Cuyahoga County Grand Jury on a one count indictment specifying a violation of R. C. 2903.06, aggravated vehicular homicide. That section provides:

"No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall recklessly cause the death of another."

The culpable mental state of recklessly is defined in R. C. 2901.22(C) as being when a person "with heedless indifference to the consequences***perversely disregards a known risk."

Aggravated vehicular homicide is a felony of the fourth degree absent a previous conviction of a vehicular homicide offense.

The testimony and exhibits presented at trial showed that on July 15, 1978, the decedent and the defendant had been out drinking together before proceeding home at approximately 1:30 A.M. Enroute home both parties impulsively agreed to have a drag race or "pushing it" over a six-pack of

beer. The race started and proceeded in a northerly direction on East 72nd Street toward Interstate 90 with the deceased in the center lane and the defendant in the curb lane. As the vehicles approached the east bound entrance ramp to the freeway, both vehicles were alongside each other and travelling at an extremely high rate of speed. The physical layout of the scene showed that the entrance ramp to the freeway gradually curved easterly to the right with East 72nd Street continuing in a northerly direction to form a grassy triangle, the third and northerly side of which is composed of Interstate 90. Upon nearing the entrance ramp, the evidence showed the decedent attempted to make the turn but instead went into the triangular shaped island strip, striking a tree 14 inches in diameter with the result that his car was severed in half. The decedent came to his death as a direct result of the impact with this blunt object.

Contemporaneously therewith, the defendant's car also went on to the grassy island area but was able to swing back in a northeasterly direction over the entrance ramp striking a snap-away telephone pole that was on the south border about 3/4 the way up the entrance ramp. Damage to the defendant's car was minimal, and he returned to his home immediately without stopping at the scene of this tragic occurrence.

A short time later the defendant returned to the scene and admitted to police that he was the driver of the vehicle which struck the snap-away telephone pole and further that both he and the decedent had been involved in a drag race immediately prior to the accident. Testimony and exhibits indicated that there never was any contact between either of the vehicles before, during or after the drag race.

The question presented herein is whether or not a charge of aggravated vehicular homicide can be sustained against a defendant who is the survivor of a drag race in which the other voluntary participant met his death, absent any contact between the vehicles.

Since the question is before this court on the defendant's motion for judgment of acquittal, this court is required to construe the evidence most strongly in favor of the state, the party against whom this motion has been directed.

The issue so framed is one of first impression in Ohio.

However, it has been addressed by courts in several other jurisdictions with conflicting results.

In Oregon, a conviction for manslaughter based upon similar facts as presented in the instant case was reversed by *State* v. *Petersen* (Ore. 1974), 526 P. 2d 1008. That court adopted the reasoning of the dissenting opinion in the Court of Appeal's decision, 17 Ore. App. 478, 522 P. 2d 912, which decision had affirmed the conviction in the trial court.

In *Petersen, supra,* that defendant had agreed with another driver to engage in a drag race. The other participant's car was struck by a truck killing a passenger in his car. The appellate court's dissenting opinion reasoned that the key issue in the case was that of legal or proximate causation. That issue, the dissent contended, turned on the legislative policy behind the statute. The passenger was held to be a participant in the case because he not only knowingly and voluntarily participated but had instigated the contest. The dissent continued, stating that "policy considerations are against imposing responsibility for the death of a *participant* in a race on the surviving racer when his sole contribution to the death is the participation in the activity mutually agreed upon." 17 Ore. App. 478, 495-496. In reaching this conclusion, the dissent noted that there was no expression of legislative intent in the manslaughter statute, which, therefore, left the issue of legal causation to the courts. In that judge's analysis of the legislative intent underlying the manslaughter statute, he found no difficulty with imposing liability on participants of a race whose reckless conduct proximately results in the death or injury of a non-participant. However the dissent reasoned that to impose liability on one participant for the death or injury of another only because both were participating in a proscribed conduct would be to inject a far greater measure of deterent value into the manslaughter statute than the legislature had meant for it to have. A deterent of this nature, the judge contended, would make unconscionable incursions into individual choice and responsibility.

The appellate court's dissenting opinion reasoned that almost anyone would be surprised and alarmed if a sovereign would prosecute a survivor of an accident on an automobile race track, even where there is contact made. This logic can be expanded to survivors of boxing matches, race horse ac-

cidents, Russian roullete, or sky diving even though there may be a high degree of recklessness present at the time of the death of participant.

The case cited in the Oregon dissenting opinion being most nearly similar to the Oregon Supreme Court's holding and to the case at bar is *Commonwealth* v. *Root* (1961), 403 Pa. 571, 170 A. 2d 310, 82 A.L.R. 2d 452. That case was an appeal to the Supreme Court of Pennsylvania of a conviction for involuntary manslaughter which had been affirmed by the Court of Appeals.

In *Root, supra,* two persons were drag racing on a highway. The defendant's car was in the lead, the other driver swerved to the left in an effort to overtake the defendant and struck an oncoming truck head on. As in *Petersen, supra,* the court in *Root, supra,* found difficulties with the lower court's analysis of proximate cause and distinguished "causation in fact" and "legal causation". The Supreme Court reasoned that the victim's own actions constituted independent negligence which superseded the original conduct chargeable to the defendant thereby "insulating" the defendant's conduct from consideration as a proximate cause of the ensuing death. Additionally, the court held that a stronger concept of proximate cause is required to sustain a criminal conviction than would be needed to impose civil liability for an act, citing its previous decision in *Commonwealth* v. *Redline* (1958), 391 Pa. 486, 504-505, 137 A. 2d 472.

Indeed, this logic seems not only fair and reasonable, but highlights a fundamental difference between civil and criminal law.

The culpable mental state required for a conviction herein is a new concept in the state of Ohio. It has been defined or interpreted as being the reckless causing of the death of another as opposed to the reckless operation of a vehicle and, therefore, is, as it should be, distinguishable from the tort law concept. Responsibility for the death is different than an act which provides a causative factor. Simply stated, the tort liability concept of proximate cause carries a lesser burden in a charge of aggravated vehicular homicide thou in proving the same element in a civil case. Persons civilly culpable for injuries to other parties are expected to pay in that arena of

our judicial system. A more direct causal connection is needed for a person to be convicted in a criminal matter. A person legally responsible for his acts in a criminal court will generally be found to be liable in a civil court for injuries caused by the same criminal actions; however, the reverse is not always true.

This same conclusion was reached on similar facts by the Court of Appeals in *Thacker* v. *State* (1961), 103 Ga. App. 36. The court reversed the lower court's conviction of the defendant for involuntary manslaughter concluding that the victim's own acts caused his death rather than those of the defendant. The court reasoned as follows:

" 'To hold a person criminally responsible for a homicide, his act must have been the proximate cause of the death as distinguished from the cause of the condition affording an opportunity for the compassing of the death by some other unconnected agency.' *Nelson* v. *State,* 58 Ga. App. 243, 249 (198 S. E. 305)."

The only case this court has found which imposed liability on the survivor of a drag race solely on the basis of that party's participation is the case of *Commonwealth* v. *Peak* (1957), 12 Pa. D. & C. 2d 379, 16 Lawrence L. J. 130. The Court of Appeals therein reasoned that the concerted conduct of the two surviving drag racers proximately caused the death of the third whose own unlawful conduct did not absolve the defendants.

Notwithstanding *Peak, supra,* it is the conclusion of this court, that the better view, in regard to the prosecution for a homicide under the circumstances present herein, would be to not impose criminal liability for aggravated vehicular homicide on the survivor of a drag race whose only contribution to the death of the other participant was his own participation in the race. No basis appears to this court for concluding that the legislature intended criminal liability for the death of a participant as opposed to a non-participant, be imposed on the survivor of a drag race as a deterent against drag racing.

Obviously, if the conduct of participants violates another statute or a non-participant was injured, there could be criminal prosecution.

Moreover, even assuming the opposite conclusion on the

issue of legislative intent, we agree with analysis of the *Root, supra,* as to the issue of proximate causation. Before one can actually be criminally responsible for the proximate cause of the death, there must be more of a showing than that of the tort concept of civil liability for proximate cause.

Considering all the facts as adduced at the trial, this court, therefore, concludes that the decedent's actions, not those of the defendant, proximately caused his own death.

For the foregoing reasons, it is the judgment of this court the defendant's motion for judgment of acquittal should be and hereby is granted.

*Defendant discharged.*