DECISION AND JUDGMENT ENTRY JUDGMENT ENTRY
{¶ 1} This is an appeal from a Vinton County Common Pleas Court, Juvenile Division, judgment. The court found Miles Clark to be a delinquent child for committing complicity to aggravated vehicular homicide, in violation of R.C. 2923.03 and 2003.06(A)(2), a third degree felony if committed by an adult.[1] Appellant assigns the following error for review:
 {¶ 2} "The trial court decision to find a juvenile delinquent of complicity to aggravated vehicular homicide was against the manifest weight of the evidence where predicate offense of street racing was dismissed at trial."
 {¶ 3} On June 24, 2003, a tragic car crash resulted in the death of eighteen-year-old Danielle Brooks. David Walker lost control of his vehicle (owned by Joshua Barnett) as he traveled approximately 100 m.p.h. while allegedly racing appellant. Walker and his two other passengers, Amanda Ousley and Joshua Barnett, also suffered injuries.
 {¶ 4} On July 8, 2003, a complaint was filed that alleged appellant to be a delinquent child by reason of committing the following offenses: (1) complicity to aggravated vehicular homicide, in violation of R.C. 2903.06(A)(2); and (2) two counts of complicity to aggravated vehicular assault, in violation of R.C. 2903.08(A)(2). A separate complaint charged that appellant violated the street racing statute, R.C. 4511.251.[2] The prosecution subsequently dismissed all counts except the complicity to aggravated vehicular homicide count.
 {¶ 5} On October 22, 2003, the trial court held an adjudicatory hearing. After hearing all of the evidence, the court determined that sometime after 10:00 p.m., Amanda, Danielle, Joshua, and David drove to the high school parking lot where they met appellant. Appellant pulled his car beside Barnett's car and appellant and Walker discussed racing their cars. Appellant and Walker then drove from the school parking lot to a turn-around known as Kempton's, located about 1½ to 2 miles from the McArthur village limits. Appellant and Walker did not pull out of the turn-around at the same time because another car was approaching. Instead, appellant pulled out first and Walker followed. Both cars traveled at excessive speeds. When Walker attempted to pass appellant, he lost control and the vehicle rolled over. This action resulted in Danielle Brooks' fatal injuries. Once appellant saw Walker's car careen out of control, he applied his brakes and came to a stop.
 {¶ 6} The trial court determined that the facts showed "beyond a reasonable doubt * * * a consistent pattern that was welded together as a single event * * * that resulted in the death of Danielle Brooks." The court stated that "the actions of David and [appellant] cannot be separated. The action of David and [appellant] constitute[s] a single event as a lookout standing outside a bank and never entering with the person who pulls a gun on people inside and takes money is a singular event." The court concluded that appellant operated his vehicle "in a criminally reckless manner knowing the risk of the manner in which he operated the vehicle and with a perverse disregard of the risk and a heedless indifference to the consequences and in so doing supported, assisted, encourage[d], cooperated, and, aided and abetted David Walker in reckless operation of a vehicle that resulted in the death of Danielle Brooks." The court thus found appellant a delinquent child by reason of committing R.C.2903.06(A)(2).
 {¶ 7} On December 24, 2003, the trial court committed appellant to the custody of the Ohio Department of Youth Services for a minimum time of six months and a maximum of up to the age of 21. The court subsequently suspended appellant's commitment. Appellant filed a timely notice of appeal.
 {¶ 8} In his sole assignment of error, appellant asserts that the trial court's finding that he committed complicity to aggravated vehicular homicide is against the manifest weight of the evidence, especially in light of the fact that the prosecution dismissed the street racing charge, which appellant claims is a predicate offense.
 {¶ 9} R.C. 2903.06(A)(2), the aggravated homicide statute provides:
 {¶ 10} No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause the death of another or the unlawful termination of another's pregnancy in any of the following ways:
 {¶ 11} * * *
 {¶ 12} (2) Recklessly[.]
 {¶ 13} We note that nothing in the aggravated vehicular homicide statute requires the state to prove a predicate offense, such as street racing. Instead, under R.C. 2903.06(A)(2) the prosecution need only prove that a defendant recklessly caused the death of another. Thus, nothing in the statute mandates that the prosecution prove that a defendant violated the street racing statute or another statute before a finding of recklessness is justified. Rather, we believe, as we discuss infra, engaging in high speed driving in concert with another vehicle or vehicles may indeed constitute recklessness.
 {¶ 14} Appellant further asserts that the trial court's delinquency finding of complicity to aggravated vehicular homicide is against the manifest weight of the evidence because appellant was not the driver of the vehicle in which the fatal injuries occurred. Again, we disagree with the appellant.
 {¶ 15} Initially, we note that we employ the same standard of review applicable to criminal convictions claimed to be against the manifest weight of the evidence when determining whether a trial court's delinquency adjudication is against the manifest weight of the evidence. See In re Watson (1989),47 Ohio St.3d 86, 91, 548 N.E.2d 210, 216; In re Beard, Ross App. No. 02CA2647, 2002-Ohio-3996; In re Tripp (Oct. 1, 2001), Hocking App. No. 01CA8. When considering a claim that the trial court's judgment is against the manifest weight of the evidence, the reviewing court sits, essentially, as a "`thirteenth juror' and [may] disagree with the fact finder's resolution of the conflicting testimony." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541 (quoting Tibbs v. Florida
(1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652). The reviewing court must dutifully examine the entire record, weighing the evidence and considering the credibility of witnesses, while being mindful that credibility generally is an issue for the trier of fact to resolve. State v. Thomas (1982),70 Ohio St.2d 79, 80, 434 N.E.2d 1356; State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Once the reviewing court has finished its examination, the court may reverse the judgment of conviction if it appears that the fact finder, in resolving conflicts in evidence, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"Thompkins, 78 Ohio St.3d at 387 (quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717). If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, a reviewing court will not reverse the judgment of conviction as against the manifest weight of the evidence. State v. Eley
(1978), 56 Ohio St.2d 169, 383 N.E.2d 132, syllabus.
 {¶ 16} Upon our review of the entire record, we find that the trier of fact did not clearly lose its way and create a manifest miscarriage of justice. Rather, we find substantial, competent, credible evidence upon which to sustain the trial court's delinquency adjudication by reason of appellant committing complicity to aggravated vehicular homicide.
 {¶ 17} To sustain a conviction under R.C. 2903.06(A)(2), the prosecution must prove beyond a reasonable doubt that: "(1) the defendant operated the vehicle, (2) the defendant was criminally reckless in operating the vehicle, and (3) a death was proximately caused by the defendant's recklessness." State v.Dudock (1983), 6 Ohio App.3d 64, 64, 453 N.E.2d 1124. The complicity statute, R.C. 2923.03(A)(2), provides:
 {¶ 18} No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 19} * * *
 {¶ 20} (2) Aid or abet another in committing the offense[.]
 {¶ 21} Thus, a complicity to aggravated vehicular homicide conviction requires the prosecution to prove, beyond a reasonable doubt, that the defendant aided or abetted another in recklessly operating a vehicle that proximately caused another's death.
 {¶ 22} Before an accused can be convicted as an aider or abettor, it must be proven beyond a reasonable doubt "that he advised, hired, incited, commanded, or counseled the principal to do the act." State v. Starr (1970), 24 Ohio App.2d 56, 58. To constitute aiding and abetting, the accused must have taken a role in causing the commission of the offense. State v. Sims
(1983), 10 Ohio App.3d 56. "Mere approval or acquiescence, without express concurrence or the doing of something to contribute to an unlawful act, is not aiding or abetting of the act." Sims, supra, at 59, citing State v. Peasley (1914),80 Wn. 99, 141 P. 316.
 {¶ 23} Ohio courts have held that criminal liability should not be imposed on the survivor of a drag race whose only contribution to the death of the other participant was his own participation in the race. See State v. Uhler (1979),61 Ohio Misc. 37, 41, 402 N.E.2d 556. Other courts, however, have recognized that when "a third person [i.e., a non-participant] has been killed as a direct consequence of the illegal racing of motor vehicles, any driver participating in the race may be convicted of manslaughter by automobile * * * regardless of which driver actually collided with the victim or the victim's vehicle, resulting in the death." See Pineta v. State (Md.App. 1993),634 A.2d 982, 988. The cases thus recognize a distinction in who was killed in the accident. If the victim was a voluntary participant, courts are reluctant to impose criminal liability upon the surviving participant. If, however, the victim was not a voluntary participant, then criminal liability may attach to both drivers who participated in the race. See Goldring v. State
(Md.App. 1995), 654 A.2d 939 (sustaining surviving drag race participant's involuntary manslaughter conviction when the other drag race participant attempted to merge into the defendant's lane of traffic, struck the side of defendant's vehicle and lost control, eventually hitting and killing two bystanders);Pineta, supra.
 {¶ 24} Ohio courts have further recognized that criminal liability may attach to both drivers when the evidence shows that the racing vehicles made contact or that the drivers shared a strong, common interest in the operation of the vehicle. For example, in State v. Hann (1977), 55 Ohio App.2d 267,380 N.E.2d 1339, the court considered the following question: "[W]hether a passenger in an automobile can participate in the operation of a motor vehicle and thereby recklessly cause the death of another and whether that passenger may be guilty of the crime of aggravated vehicular homicide as an aider and abetter of the actual driver." Id. at 268. In Hann, the defendant and Mark Waugh leased a car and then attempted to cash a stolen, forged check at a drive-in window of a bank. Each had filled in part of the check and both knew that the check was stolen from Waugh's father. Both viewed the cashing of the check as a common enterprise. Eventually, a police chase ensued, with Waugh driving. Waugh ended up hitting a third car, killing the driver. On appeal, the defendant argued that he did not participate in the vehicle's operation and that he could not be convicted of aggravated vehicular homicide. The court of appeals disagreed, reasoning that:
 {¶ 25} "[The d]efendant had a strong, common interest with Waugh in the operation of the vehicle and this interest was not remote or passive. Defendant had a part in and shared in the benefits obtained from the operation of the vehicle. Defendant procured the vehicle and attempted to dispose of incriminating evidence during the final chase. He was more than just a passive, quiescent, disinterested passenger."
 {¶ 26} Id. at 269-70 (citations omitted). The court found that the defendant could be liable as an aider and abettor because he knew of "the attendant risks inherent in high speed flight." Id. at 270.
 {¶ 27} In State v. Buterbaugh (Sept. 16, 1999), Franklin App. No. 98AP-1093, the court upheld the defendant's two involuntary manslaughter convictions when the evidence established that the defendant had been drag racing and speeding, and had made contact with the other vehicle. In Buterbaugh, a Pontiac Firebird and a Saturn collided. The driver and a passenger in the Firebird were killed, as was a passenger in the Saturn. The defendant, who also had been driving a Firebird, claimed that he witnessed the accident. The investigating officer discovered "fresh damage on the [defendant's] passenger's side of the car that corresponded with the damage on the driver's side of the [other] Firebird." Tests later showed that the two Firebirds made contact. At trial, the state argued that appellant proximately caused the accident and resulting deaths by engaging in street racing, in violation of R.C. 4511.251, or by speeding, in violation of R.C. 4511.21.
 {¶ 28} On appeal, the court found sufficient evidence to support the defendant's involuntary manslaughter convictions. The court noted that the defendant traveled at a high rate of speed, engaged in drag racing, and made contact with the other vehicle. The court further observed, however, "that if contact had not occurred between the vehicles * * * the evidence would have been insufficient to find that the deaths * * * were the proximate result of appellant's action." In explaining the foregoing conclusion, the court stated:
 {¶ 29} "In Velazquez v. State (Fla.App. 1990),561 So.2d 347, a Florida appellate court reasoned that when a driver's death was caused only by drag racing the defendant, `the defendant's participation in the subject "drag race" was not a proximate cause of the deceased's death because, simply put, the deceased, in effect killed himself by his own volitional reckless driving — and, consequently, it would be unjust to hold the defendant criminally responsible for this death.' Velazquez,561 So.2d at 353. See, also, State v. Martin (La. 1989),539 So.2d at 1239, fn. 9 (`The only noticeable trend in exceptions to the general rule of [joint criminal liability arising out of joint participation in a race] occurs in cases where the victim was also a participant in the race. * * * In these cases, criminal liability was held inappropriate for the death of a willing participant in the criminally negligent conduct.')."
 {¶ 30} Also, in State v. Butler (1967), 11 Ohio St.2d 23,227 N.E.2d 627, the Ohio Supreme Court held:
 {¶ 31} "Where two defendants engage in an automobile drag race, and one defendant, while attempting to pass the other by driving on the left side of the highway, is suddenly confronted by a car coming over a crest in the road, and in the resulting collision the driver of the oncoming car is killed, and there is testimony that the defendant attempted to avoid the collision by operating his car to the right, striking the other defendant's automobile before colliding with the oncoming car, the evidence of an intent and purpose to maliciously kill does not attain to that high degree of probative force and certainty which * * * is required to sustain a verdict of murder in the second degree."
 {¶ 32} Id. at paragraph two of the syllabus. However, theButler court concluded that the above evidence would be sufficient to convict "both defendants, either as principal or aider and abettor, * * * of manslaughter in the second degree as provided in Section 4511.18, Revised Code." Id. at paragraph three of the syllabus.
 {¶ 33} In State v. Uhler (1979), 61 Ohio Misc.2d 37,402 N.E.2d 556, the court considered the following question: "[W]hether or not a charge of aggravated vehicular homicide can be sustained against a defendant who is the survivor of a drag race in which the other voluntary participant met his death, absent any contact between the vehicles." Id. at 38. In Uhler,
the defendant was charged with aggravated vehicular homicide. While the evidence showed that the defendant and the decedent were drag racing and speeding, no contact occurred between the two vehicles. The court granted the defendant's motion for judgment of acquittal. The court reasoned that "the better view * * * would be not to impose criminal liability for aggravated vehicular homicide on the survivor of a drag race whose only contribution to the death of the other participant was his own participation in the race." Id. at 41.
 {¶ 34} In State v. Markley (June 13, 1994), Butler App. Nos. CA93-03-049 and CA93-03-058, the defendant was convicted of complicity to aggravated vehicular homicide and complicity to aggravated vehicular assault. The defendant and another individual, Thomas, were speeding in separate vehicles. Thomas crashed into a vehicle operated by a third-person, killing the third-person and injuring a passenger. On appeal, the defendant argued that the evidence was not sufficient to support either charge. Two judges agreed, stating: "The record contains no evidence that appellant advised, hired, incited, commanded, counseled, or in any way played a role in causing the accident. Appellant is guilty of nothing more than speeding." A third judge dissented, however. The dissenting judge reasoned that substantial evidence existed that appellant operated his vehicle in a reckless manner, not only by speeding, but by driving close to the other vehicle. The dissent noted that witnesses testified that the two vehicles were "following each other dangerously close, `bumper to bumper,' and revving their engines, while traveling at speeds of up to one hundred m.p.h." The dissent concluded:
 {¶ 35} "Just because appellant did not hit the [third vehicle] does not mean that he cannot be found guilty of complicity in the offenses where evidence was presented, which the jury was free to believe, indicating that the two were `running together' and may have been engaged in some sort of speed contest. Thus, although there was no evidence of any express agreement to race, a jury could have found that appellant's conduct encouraged, assisted, or incited Thomas to drive at increasingly greater speeds than were safe for this road by continuing his own speed. As such, substantial evidence existed that appellant aided or abetted Thomas in the commission of the underlying offenses."
 {¶ 36} In State v. Luttrell (July 31, 1985), Clinton App. No. CA85-02-002, the defendant and two other individuals, Randy Williams and Joe Johnson, left a party in separate vehicles to travel to another party. Johnson followed the defendant's vehicle. While en route, Johnson's and the defendant's vehicle traveled at high rates of speed for approximately 1.2 miles of the trip. The defendant asked his passenger, Williams, if he should slow down, which he did. Johnson, however, drove across a double yellow line at a hill crest to pass appellant. As he did so, his car collided with another vehicle, killing the two occupants, as well as himself. The state subsequently charged appellant with, inter alia, drag racing and three counts of vehicular homicide.
 {¶ 37} The trial court dismissed the drag racing charge and the vehicular homicide charge resulting from Johnson's death. Following his conviction, the defendant appealed and argued that sufficient evidence did not exist to show that he caused the deaths. The court of appeals agreed, explaining:
 {¶ 38} "There is no question but that appellant was guilty of speeding and that he had been drinking at the party which he attended earlier in the evening. There is nothing in the record, however, to establish that appellant was under the influence of alcohol, or that he committed any act which constituted reckless operation as mere speeding in and of itself does not constitute reckless operation. We recognize that had appellant not been where he was, traveling at a high rate of speed, Johnson may not have been involved in the fatal accident. Nevertheless, appellant's presence at the scene under such circumstances cannot be said to constitute the proximate cause of the accident.
 {¶ 39} Appellant testified that he exceeded the speed limit to have some fun and his passenger speculated that the purpose was to see who could go faster. The arresting officer stated that, in his opinion, Johnson and appellant were drag racing. However, there was nothing in the record to establish any plan to race. Thus, since Johnson was following appellant to a party at a location unknown to Johnson, in the absence of evidence establishing an agreement to race, we find that there was no error on the part of the trial judge in dismissing the charge of drag racing.
 {¶ 40} It follows that once appellant was found not guilty of drag racing, all charges should have been dismissed. We recognize there was a tragic accident in which three people lost their lives, but absent the showing of an agreement between Johnson and appellant to race, appellant cannot be charged with responsibility for the acts of Johnson.
 {¶ 41} The state contends that State v. Butler (1967),11 Ohio St.2d 23, is applicable and that as in Butler, appellant, as the driver of the car being overtaken, is an aider and abettor and therefore responsible for the deaths of the [victims] in the same manner as if it were his vehicle instead of Johnson's that collided with the Stewart vehicle. Although we abhor the conduct of appellant on the evening in question, Butler is not applicable because in Butler, the jury found sufficient evidence to establish beyond a reasonable doubt that the defendants were guilty of drag racing. It followed then that both were guilty of manslaughter in the second degree as provided in R.C. 4511.18 as it existed at that time. It also follows that in the case sub judice, since there was no evidence of an agreement to race, the appellant cannot be found guilty of vehicular homicide or leaving the scene."
 {¶ 42} Although some of the foregoing cases appear to support appellant's argument in the case sub judice that he cannot be held criminally responsible for the victim's death, we find the cases distinguishable and, to the extent that they conflict with our decision, we disagree with their conclusions. Luttrell
contains similar facts to the case at bar, but we find an important distinction. In Luttrell, unlike in the case at bar, the defendant decided to slow down before the accident occurred. Thus, in Luttrell, at the time that the accident occurred, the defendant ceased the reckless operation of his vehicle. In the case sub judice, however, the court found, and the record supports the court's finding, that at the time of the fatal accident appellant and Walker were actively participating with each other in driving their vehicles at an excessive speed. Appellant did not slow down prior to the accident. Moreover, inLuttrell the defendant was not charged with complicity to vehicular homicide. The facts in the instant case show that appellant, by traveling at an excessive rate of speed and by discussing racing, encouraged Walker to recklessly operate his vehicle. Cf. State v. Cooey (1989), 46 Ohio St.3d 20, 25,544 N.E.2d 895 (upholding felonious assault conviction even though the defendant was not the person who actually dropped the piece of concrete that led to victim's injuries when the defendant had participated in throwing objects over the bridge along with his companions; the court concluded that the defendant's participation encouraged his friend to continue throwing objects off the bridge and thus constituted complicity).
 {¶ 43} To the extent that the cases hold that the evidence must show an explicit agreement to race or a violation of the street racing statute to support a complicity to aggravated vehicular homicide conviction, we disagree with that conclusion. We believe that when two drivers both operate their motor vehicles by traveling at excessive speeds (in the instant case approximately 100 m.p.h.), each driver should be charged with knowledge that such conduct has a high likelihood of resulting in serious injury or death. Moreover, we believe that such conduct exhibits a heedless indifference to the consequences and shows that both drivers perversely disregarded a known risk. See R.C.2901.22(C). We find the dissenting opinion in Markley
persuasive and well-reasoned: "[A]lthough there was no evidence of any express agreement to race, a jury could have found that appellant's conduct encouraged, assisted, or incited [Walker] to drive at increasingly greater speeds than were safe for [the] road by continuing his own speed."
 {¶ 44} We further disagree with those decisions that hold that contact must occur between the two vehicles before a defendant may be convicted of complicity to aggravated vehicular homicide. We note that the Butler court did not explicitly hold that before a defendant could be convicted of complicity to second-degree manslaughter as it existed under R.C. 4511.18, the evidence must show that the vehicles made contact. Instead, the court recognized that such a fact would help support the conviction. We believe the physical contact constitutes one factor that a trier of fact must assess in deciding whether a driver acted recklessly and may bear criminal responsibility for actions that flowed from that conduct. However, physical contact between the vehicles is not an absolute requirement in order to establish criminal culpability.
 {¶ 45} We recognize that the instant case presents a difficult issue and has formed the basis of a discussion of authority among Ohio courts. Nevertheless, after our review of the evidence adduced at trial, we believe that the prosecution did present substantial evidence upon which the trier of fact could conclude, beyond a reasonable doubt, that the elements of the offense had been established. Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.
Judgment Affirmed.
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Vinton County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kline, P.J. Harsha, J.: Concur in Judgment Opinion.
[1] A trial court may enter a finding of delinquency when the evidence demonstrates, beyond a reasonable doubt, that the child committed an act which would have constituted a crime if committed by an adult. R.C. 2151.35(A); Juv.R. 29(E).
[2] On June 1, 2004, Sub. H.B. 52 amended all of the above statutes. See 2004 Ohio Laws 86. None of the amendments affect this appeal.