[Cite as *In re C.X.M.*, 2026-Ohio-2318.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

IN RE C.X.M.                                 :

A Minor Child                                :

                                       No. 115481

                                         :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
               AND REMANDED
**RELEASED AND JOURNALIZED:** June 18, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL-25-106519

---

### *Appearances:*

Friedman, Nemecek, Long & Grant, L.L.C., and Eric C. Nemecek, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Michael Timms, Assistant Prosecuting Attorney, *for appellee*.

SEAN C. GALLAGHER, J.:

{¶ 1} C.X.M. ("C.M.") appeals the adjudication of delinquency for aggravated vehicular homicide for his part in causing the death of the victim, who was riding in the codefendant's vehicle when it crashed due to reckless driving. The juvenile court imposed a one-year driving license suspension, a one-year,

suspended term of commitment at the Ohio Department of Youth Services, and community-control supervision until C.M.'s 21st birthday.[1] For the following reasons we affirm in part, reverse in part, and remand to correct the final disposition entry.

{¶ 2} C.M. presents the case as a tragic single-vehicle crash caused by his friend R.P.'s impaired and reckless driving, which caused the death of their mutual friend who was a passenger in R.P.'s vehicle. According to C.M., R.P. lost control of his vehicle during what he considers a "joy ride." The State counters that C.M. and R.P.'s conduct was a coordinated, race-like endeavor with both driving separate vehicles at excessive speeds attempting to keep up with the other through traffic. C.M.'s primary focus is on his culpability from the perspective of whether he was complicit in R.P.'s criminal conduct. To prove his point, C.M. relies on a 45-year-old trial court decision to frame the analysis, a decision that was issued when the modern criminal code was in its infancy. In that nonbinding, lower court decision, the trial court concluded that participants in illegal street racing are not responsible for a participant's death based on the trial court's consideration of the "new concept" of reckless mental state. *State v. Uhler*, 61 Ohio Misc. 37, 41 (1979). The primary issue before this panel is the interplay between the complicity statute

---

[1] The adjudication of delinquency proceeding occurred in Summit County. The action was transferred to the juvenile court under Juv.R. 11, the county of C.M.'s residency, for the purposes of disposition. *See, e.g., In re P.M.S.*, 2023-Ohio-3825, ¶ 5 (12th Dist.).

and the elements of aggravated vehicular homicide — any secondary issues will be addressed where relevant.

{¶ 3} C.M. and the codefendant R.P. were among a group of five teenagers who "shared an affinity" for reckless driving on public roads, sustaining speeds exceeding 100 miles per hour (m.p.h.) while weaving through traffic. C.M.'s and R.P.'s conduct went largely unchecked despite their age. R.P.'s car, a 1995 Honda Del Sol, was in fact dangerous when driven at those speeds because the front suspension and steering were inadequate. C.M.'s car, a late-model Dodge Charger, was faster and more capable at higher speeds, a fact known to the group. R.P. testified that this form of reckless driving was not something he did frequently when driving by himself. It was primarily when the group, including C.M., got together that they would drive at excessive speeds in an attempt to keep up with one another. C.M. conceded this observation in his opening brief.[2] Although the teenagers did not technically engage in a race, their driving was consistent with the same illegal conduct.

{¶ 4} On the night in question, C.M. and R.P. met three others at a gas station near Kent, Ohio. Both teenagers were driving their own vehicles. One of the others in the group drove a third car, so there were three drivers and two passengers. R.P. consumed some form of marijuana. All three vehicles left the gas

---

[2] "By all accounts, these individuals shared an affinity for cars and would sometimes get together for 'joy rides' where they would drive fast and attempt to keep up with one another."

station together to make their way home to Brecksville, Ohio. C.M. and R.P. sped north on Interstate 77 ("I-77") at sustained speeds exceeding 100 m.p.h. The law-enforcement accident reconstructionist estimated their speed at one point, through review of traffic cameras, to reach between 120 and 130 m.p.h. Traffic cameras depicted the pair driving without their headlights. Both cars were equipped with daytime driving lights that were being used by C.M. and R.P. instead of the headlights and rear marker lights as required by law — a technique, according to the testimony presented, used by street racers to avoid detection from officers traveling behind the speeding cars.

{¶ 5} The other two friends decided against partaking in the reckless behavior — mostly because one of the two was reprimanded by his parents, who observed how fast he was moving on the way to the gas station through an application installed on a smart phone. The two in the third vehicle briefly stopped at the scene of the ensuing accident but were told to leave by the emergency responders who were already on scene — simultaneously demonstrating both the reasonable speed at which they were driving and the excessive speed of both C.M. and R.P.

{¶ 6} At the point where R.P. lost control, I-77 consolidates into two lanes. R.P. was in the left-most lane as it was ending, recently passing C.M.'s vehicle. C.M., estimated to be traveling at the same triple-digit speeds, was in the center lane, soon to become the left-most lane. C.M.'s sustained speed was corroborated with the evidence demonstrating that he witnessed R.P.'s wreck. As the lane

ended, R.P. lost control and drove straight into the inner guardrail, causing his car to flip several times as it rolled across the grassy median, eventually landing upright. The officer documenting and performing the accident reconstruction immediately estimated R.P.'s speed at well over 100 m.p.h. in light of the distance traveled by the tumbling car and the distance the car was airborne between flips. The victim, having failed to use the seat belt, was ejected from the car. He ultimately died from his injuries either on route or upon admittance to the emergency room. R.P. sustained serious injuries, including a traumatic brain injury that impacted his memory of the events.

{¶ 7} As officers cleared and investigated the scene, C.M. made several statements regarding their speed that were proven untrue by the traffic camera footage and the accident reconstruction. C.M. told officers that he and R.P. were traveling at or slightly above the speed limit and an unidentified vehicle abruptly and dramatically braked in front of R.P., causing him to run wide in the merging lanes to avoid a collision. C.M. identified R.P. as the driver in the body-camera footage as he discussed the incident with officers before learning of the victim's fate.

{¶ 8} At some point days after the incident, one of the investigating Ohio State Highway Patrol officers told C.M. that he would not be charged for his conduct if he agreed to confirm that R.P. was in fact driving. The Summit County assistant prosecutor did not authorize a no-prosecution deal and never executed it with C.M., in part because the basis of any agreement would be illusory based on the undisputed fact that C.M. had already identified R.P. as the other driver.

{¶ 9} C.M. was adjudicated delinquent for complicity to commit aggravated vehicular assault based on the evidence demonstrating that C.M. "assisted, encouraged, cooperated with, advised, or incited" R.P. in committing an offense, which if committed by an adult would constitute the crime of aggravated vehicular assault. *See State v. Johnson*, 93 Ohio St.3d 240, 245 (2001); R.C. 2923.03(A)(2). He appeals, advancing four assignments of error challenging (1) the sufficiency and weight of the evidence as to the aggravated-vehicular-homicide adjudication (which will be addressed together in light of the arguments presented, *see supra* fn. 3); (2) the introduction of evidence to show C.M.'s habit under Evid.R. 406; (3) the failure of the juvenile court to enforce the no-prosecution agreement discussed with a law enforcement officer; and (4) the designation of the aggravated vehicular homicide as a second-degree felony. Each argument will be addressed in turn.

{¶ 10} The standard of review for a sufficiency challenge in delinquency adjudications is the same as the familiar standard for felony defendants. *See In re T.W.*, 2018-Ohio-3275, ¶ 17 (8th Dist.). The dispositive question is whether "'after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. McFarland*, 2020-Ohio-3343, ¶ 24, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. C.M. claims that "the State Failed to Present Sufficient Evidence to Sustain a Conviction Under R.C. § 2903.06(A)(2)(a)," which provides in pertinent part that "no person, while

operating or participating in the operation of a motor vehicle . . . shall [recklessly] cause the death of another" because the victim was a voluntary participant in the reckless driving.

{¶ 11} C.M. was adjudicated delinquent for complicity to commit aggravated vehicular homicide. A criminal actor is complicit in the commission of an offense when "acting with the kind of culpability required for the commission of an offense, shall . . .(2) [a]id or abet another in committing the offense[.]" R.C. 2923.03(A)(2). "R.C. 2923.03(F) further provides that '[w]hoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender.'" *State v. Howard*, 2025-Ohio-3281, ¶ 36 (8th Dist.). Complicity to commit the offense is demonstrated with evidence that the defendant "'supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal.'" *Id.* at ¶ 36, quoting *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. Thus, a reasonable trier of fact may infer participation in criminal intent from the offender's "'presence, companionship and conduct before and after the offense is committed.'" *Id.,* quoting *Johnson* at 245; *State v. Pruett*, 28 Ohio App.2d 29, 34 (4th Dist. 1971); *see also McFarland* at ¶ 26; *Howard* at ¶ 36.

{¶ 12} In order to sustain the conviction against C.M. for complicity to commit aggravated vehicular homicide, applying that law to the current case, the State was required to present evidence that C.M. participated or encouraged R.P.'s reckless driving, which undisputedly led to the victim's death. In other words, there

is sufficient evidence of complicity if the State proves that C.M.'s conduct encouraged or incited R.P. to drive in an extremely dangerous manner. On this point, R.P. testified that the group, including C.M., would recklessly drive to "keep up with one another," as the two teenagers were doing on the night of the victim's death from the totality of the evidence submitted by the State, including the traffic-camera recordings. Indeed, the juvenile court's conclusion, sitting as the trier of fact, rested on this observation: "[C.M.'s] action of speeding and moving through traffic with [R.P.] had the effect of inciting [R.P.] to continue to drive recklessly and in concert with [C.M.]."

{¶ 13} Instead of directly addressing complicity, C.M. claims that he cannot be deemed criminally liable for R.P.'s criminal conduct because the victim was a voluntary participant in the illegal activity. In addition, C.M. claims that he cannot be complicit in R.P.'s criminal conduct because he and R.P. were not technically racing. That latter point is easily dispelled. Neither R.P. nor C.M. were charged with the crime of street racing under R.C. 4511.251. C.M. was charged with complicity in committing aggravated vehicular homicide, which only depends on reckless driving, not engaging in what is defined as street racing under R.C. 4511.251(A).

{¶ 14} As mentioned earlier, the framework of C.M.'s primary argument challenging his complicity in R.P.'s commission of the aggravated vehicular homicide is based on *Uhler*, 61 Ohio Misc. 37, in which the trial court acquitted a defendant of aggravated vehicular homicide in 1979 following a jury trial because "a court cannot impose criminal liability on the survivor of a drag race accident whose

only contribution to the death of the other participant was his own participation in the race." *Id.* at syllabus. As at least one other court has warned that *Uhler,* a nonbinding decision from a trial court, "does not accurately reflect the current state of the law" with regards to complicity applied to aggravated vehicular homicide. *In re Williams*, 2011-Ohio-4338, ¶ 37 (3d Dist.). The Third District accurately distinguished the near half-century-old case, concluding that "there is nothing in the statutes for complicity, or for aggravated vehicular homicide and assault, that exempts a person from criminal liability for the death of another willing participant." *Id.* at ¶ 40; *see also In re Clark*, 2004-Ohio-3851, ¶ 43 (4th Dist.); *State v. Buterbaugh*, 1999 Ohio App. LEXIS 4233 (10th Dist. Sept. 16, 1999).

{¶ 15} The other cases on which C.M. relies are similarly dated. In *State v. Luttrell,* 1985 Ohio App. LEXIS 8399 (12th Dist. .July 31, 1985), for example, the appellate court concluded that "[t]here is no question that appellant was guilty of speeding and that he had been drinking at the party which he attended earlier in the evening[,]" but there is "nothing in the record, however, to establish that appellant was under the influence of alcohol, or that he committed any act which constituted reckless operation as mere speeding in and of itself does not constitute reckless operation." *Id.* at *3. Most notably, that case is not binding on this court and is limited to the particular facts of that case. As modern precedent has noted, however, *Luttrell's* conclusion regarding speeding constituting reckless driving is no longer valid. Speeding can be deemed reckless operation. *State v. Bradley-Lewis*, 2020-Ohio-3563, ¶ 53 (11th Dist.), citing *State v. Vanoss*, 2010-Ohio-1453, ¶ 13 (11th

Dist.), and *State v. Tamburin*, 145 Ohio App.3d 774, 780-781 (9th Dist. 2001). For this reason, we decline to follow that line of authority.

{¶ 16} And finally, C.M.'s attempt to find other motivating factors for R.P.'s conduct is not relevant to the sufficiency analysis. C.M. claims that

> R.P.'s decision to drive in a reckless manner that evening could have been influenced by any number of things having nothing to do with C.M. For instance, R.P. could have driven fast because he was concerned about missing curfew; maybe his judgment was severely clouded due to being under the influence of marijuana; he might have wanted to show off in front of his friends; or perhaps [the victim] was encouraging him to see how fast the car could go.

None of those assertions are supported by any facts introduced in the record in C.M.'s defense. And despite the speculative nature of the argument, none of that addresses the facts in this case demonstrating that C.M. at the least incited or encouraged R.P. to drive at hazardous speeds through his conduct of leading R.P. through traffic without their headlights at obscene speeds moments before R.P. overtook C.M. and lost control of the vehicle.

{¶ 17} The complicity adjudication is based on sufficient evidence, and therefore, the first assignment of error is without merit.[3]

---

[3] In the second assignment of error, C.M. presents the same argument underlying the first assignment of error, that "the State failed to offer *any* testimony or evidence to support its self-serving conclusion" that C.M. was complicit in the aggravated vehicular homicide committed by R.P. (Emphasis added.) C.M. does not challenge the credibility of the evidence presented, only whether it was sufficient to form the basis of the adjudication. Because the second assignment of error is based on the argument that the State failed to present any evidence, i.e., sufficient evidence, it too is overruled.

{¶ 18} C.M. next claims the juvenile court erred by permitting the State to introduce "other acts" evidence under Evid.R. 404(B) when R.P. testified about prior occasions where the group would recklessly drive, a video of C.M. driving his car at 145 m.p.h. on a public road, and other similar evidence. The State, in response, claims the evidence was admissible under Evid.R. 404(B), or in the alternative, was harmless error because there was no dispute at trial that C.M. was driving in excess of 100 m.p.h. along with R.P. based on the highway camera footage memorializing criminal conduct. It must be remembered that Cuyahoga County was not the venue for the adjudication, so the State in large part is working from a cold record.

{¶ 19} Nevertheless, the parties' framing of the argument does not reflect the basis of the juvenile court's decision. The disputed evidence was presented and admitted under Evid.R. 406, which provides that "[e]vidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." "Evid.R. 406 is an exception to Evid.R. 404(B) since it admits evidence to show that a person acted in conformity with that person's character on a particular occasion." *State v. Gaines*, 2003-Ohio-6855, ¶ 26 (8th Dist.).

{¶ 20} In light of the disparity between the record and the arguments presented, we decline to address the merits of the question asked. Under App.R. 16(A)(7), the appellant's brief must contain "[a]n argument containing the

contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Because the arguments presented do not address the basis of the decision to admit the evidence, there is no basis to find error.

{¶ 21} C.M. also argues that the State should not have been able to prosecute him because one of the officers offered him a no-prosecution deal if he would again identify R.P. as the driver. It is undisputed that C.M. already identified R.P. as the driver when speaking with officers at the scene of the accident, as memorialized on the body-camera footage introduced at trial. Importantly for appellate purposes, although C.M. discussed the conversation with the juvenile court at trial, he never sought to enforce the agreement. He therefore forfeited any reliance on the officer's offer, which was never formally accepted by C.M. because the Summit County assistant prosecutor declined to engage in any discussion in light of C.M.'s initial identification of R.P. as the driver. Importantly, C.M. has not claimed in this appeal that his trial counsel rendered ineffective assistance by failing to timely raise the issue with his prosecution. The argument is overruled.

{¶ 22} There is one final issue to be addressed. C.M. notes that his adjudication for aggravated vehicular homicide was classified as a second-degree felony based on the initial allegation that he was driving while under a license suspension at the time of the victim's death. R.C. 2903.06(A)(2) violations are elevated to second-degree felonies when the additional factor of a license suspension

is included but are otherwise third-degree felonies. The facts, as conceded by the State, through its silence in this appeal, demonstrated that C.M. was not driving under a suspension on the night of the incident. The juvenile court initially amended the charges to reflect the concession, but in adjudicating C.M. delinquent, the court cited the violation as a second-degree felony, an issue unresolved at disposition. As a result, the disposition entry denoting the violation of R.C. 2903.06(A)(2) as a second-degree felony is in error. We remand for the limited purpose of correcting the final entry to reflect that the violation of R.C. 2903.06(A)(2) in this case is a third-degree felony.

{¶ 23} Affirmed in part, reversed in part, and remanded.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

EILEEN T. GALLAGHER, P.J., and
ANITA LASTER MAYS, J., CONCUR